IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** : | |
| : | **CHAPTER 11** |
| **EARTH PRIDE ORGANICS, LLC** : | |
| **LANCASTER FINE FOODS, INC.** : | |
| : | |
| **Debtor** : | **BANKRUPTCY NO. 17-13816 (ELF)** |
| : | |
| **EARTH PRIDE ORGANICS, LLC** : | |
| **LANCASTER FINE FOODS, INC.** : | |
| : | |
| **Plaintiffs** : | |
| : | |
| v. : | |
| : | **ADVERSARY NO. 19-** |
| **LOEB TERM SOLUTIONS, LLC** : | |
| : | |
| **Defendant** : | |

**COMPLAINT OF EARTH PRIDE ORGANICS, LLC AND
LANCASTER FINE FOODS, INC., FOR INJUNCTIVE RELIEF PURSUANT TO
11 U.S.C. § 105(a) AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiffs, EARTH PRIDE ORGANICS, LLC ("EPO") and LANCASTER FINE FOODS, INC. ("LFF," collectively with EPO, the "Debtors"), by and through their counsel, Maschmeyer Marinas P.C., hereby bring this Complaint against LOEB TERM SOLUTIONS, LLC ("Loeb") for Injunctive Relief pursuant to 11 U.S.C. § 105(a) and/or Fed. R. Civ. P. 65, as made applicable by Fed. R. Bankr. P. 7065, and in support thereof, respectfully aver as follows:

**PARTIES**

1. Plaintiff EPO is a Pennsylvania limited liability company with a primary business address at 2320 Norman Road, Lancaster, Pennsylvania 17601.

2. Plaintiff LFF is a Pennsylvania corporation with a primary business address at 501 Richardson Drive, Suite 300, Lancaster, Pennsylvania 17601.

3. Defendant Loeb is an Illinois limited liability company with a primary business address at 4131 South State Street, Chicago, Illinois 60609.

**JURISDICTION AND VENUE**

4. The Bankruptcy Court has jurisdiction over this over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e), and this adversary proceeding arises in, under and is related to, a pending bankruptcy case.

5. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (G) and (O).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

7. The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a), Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

8. On May 31, 2017 (the "Petition Date"), the Debtors filed Voluntary Petitions for Reorganization under Chapter 11 of the Bankruptcy Code in the Eastern District of Pennsylvania.[1] See [Docket Entry No. 1].

9. In an Order dated June 9, 2017, this Honorable Court authorized the joint administration of the Debtors' bankruptcy cases in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. See [Docket Entry Nos. 11-12, 15, 41 and 51].

10. On August 14, 2017, the United States Trustee for Region 3 appointed the OFFICIAL COMMITTEE OF UNSECURED CREDITORS (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1). See [Docket Entry No. 146].

11. The Debtors' initial Chapter 11 plan of reorganization and disclosure statement

---

[1] The record will be referred to herein by the main docket number captioned above as "[Docket Entry No[s]. ___ ]".

2

were filed on November 20, 2017, in accordance with 11 U.S.C. § 1121.  See [Docket Entry Nos. 239, 240].  Amended versions of the plan and related statement were subsequently submitted on March 12, April 27 and June 1, 2018.  See [Docket Entry Nos. 345, 346, 391, 393, 419, 421].

12. On June 6, 2018, the Debtors and the Committee filed a fourth amended joint plan of reorganization (the "Joint Plan"), together with a fourth amended joint disclosure statement (the "Joint Disclosure Statement").  See [Docket Entry No. 428 and 429].

13. In an Order dated June 7, 2018, this Honorable Court approved the Joint Disclosure Statement pursuant to 11 U.S.C. § 1125.  See [Docket Entry No. 431].

14. Thereafter, the Joint Plan received the requisite number of votes to meet the confirmation threshold.  See [Docket Entry Nos. 453 and 454].

15. A confirmation hearing was held on September 6, 2018, and at the end of the hearing, the parties were instructed to submit a proposed confirmation order.  The proposed order was timely submitted on September 14, 2008.  See [Docket Entry No. 501].

16. Three days later, on September 17, 2018, this Honorable Court entered an Order confirming the Joint Plan (the "Confirmation Order").  See [Docket Entry No. 502].

17. Since then, the Debtors have been engaged in trying to close their exit financing agreement.  Unfortunately, through no fault of their own, the Debtors have been delayed in closing this financing agreement and did not implement the Joint Plan on October 15, 2018.

18. Accordingly, on November 9, 2018, LOEB TERM SOLUTIONS, LLC ("Loeb"), filed a Motion for Relief from the Stay as provided under Article VIII of the Joint Plan (the "Relief Motion") in order to recover certain Debtors' assets guaranteeing monies initially loaned to LFF by Loeb.  See [Docket Entry No. 543].  The Debtors submitted a timely Response with Affirmative Defenses on November 26, 2018.  See [Docket Entry No. 562].

19. Thereafter, the parties reached an agreement whereby Loeb deferred the hearing

date on the Relief Motion pursuant to the following terms and conditions:

    (a)    The Debtors agreed that the total dollar figure actually owed to Loeb amounted to $791,900;

    (b)    The Debtors agreed to pay to Loeb the initial sum of $50,000 by December 19, 2018;

    (c)    The Debtors agreed to pay the remaining balance of the amount actually owed to Loeb by January 7, 2019.

Failure to make the payments agreed upon above resulted in a forfeiture of the $50,000 payment initially made in December 2018 and a reimposition of the full amount actually owed to Loeb, plus certain other conditions – such as an immediate cease and desist of the collateral. These terms and conditions are included in a Stipulated Order agreed upon by the parties last December that is to be submitted to the Bankruptcy Court by Loeb in case of non-compliance.

    20.    In the meantime, between mid-September and early-December 2018, the Debtors met all of the conditions required by Big Shoulders Capital (the "Lender") to close on the parties' exit financing agreement. Among the things done, in that three-month time period:

    (a)    The Debtors prepared sources and use lists as required by Lender in order to close;

    (b)    The Debtors prepared updated AR and AP lists as required by Lender in order to close;

    (c)    The Debtors reviewed and executed all subordination agreements required by Lender in order to close. These included subordination agreements with Azadian Group ("Azadian"), the Commonwealth of Pennsylvania and the Internal Revenue Service ("IRS")

    (d)    The Debtors reviewed and executed a landlord waiver form as required by Lender in order to close;

    (e)    The Debtors put together payoff letters from Azadian, Loeb as required by Lender in order to close;

    (f)    The Debtors put together all funding required to close on their exit financing agreement with Lender. As a matter of fact, a huge portion of those monies were deposited in the Debtors' attorneys' escrow account.

 (g) The Debtors reviewed and executed a DACA agreement as required by Lender in order to close;

 (h) The Debtors reviewed and executed an agreement with the bankruptcy professionals as required by Lender in order to close;

 (i) Last, but not least, the Debtors reviewed, prepared and finalized all additional documents required by Lender in order to close. These additional documents included (i) articles of organization, (ii) operating agreements, (iii) signed consent forms, (iv) signature pages, (v) officer certificates, (vi) copies of bylaws, (vii) certificates of incorporation, (viii) certificates of good standing and (ix) unanimous consent forms.

See, Thompson Declaration, at ¶ 10, a copy of which is attached hereto as Exhibit "A" and made a part hereof.

 21. This being so, by early-December 2018, the Debtors had diligently met all of the requirements for exit financing, including the participation of the IRS at closing. Nonetheless, at that moment in time, one more thing happened – the federal government closed.

 22. Since then, the Nation has been in the throes of a government shutdown that has shuttered nine federal departments and various federal agencies – among them, the IRS. This means that the IRS is currently operating with a skeleton staff of just one-eighth of its normal workforce, and although some key functions remain in place, participating at exit financing closings is not at the top of their list of priorities.[2]

 23. The Debtors are ready, willing, and able to close and implement the terms of the Joint Plan. Unfortunately, the exit financing lender requires them that, in order to close, the IRS has to sign on to their exit financing agreement.

---

[2] In fact, complicating matters further, this year marks the first time individual filers will be preparing returns under the new tax law that passed in 2017 and this will stretch IRS resources even more, unless the government opens.

## COUNT I
## REQUEST FOR INJUCTIVE RELIEF

24. The averments set forth in paragraphs 1 through 23 above are incorporated herein, as if fully set forth at length.

25. At this time, if Loeb were to exercise its remedies and force the Debtors to immediately cease and desist of their rights over certain critical equipment, the Debtors' ability to successfully reorganize and implement the Joint Plan approved and confirmed last September would be seriously compromised causing irreparable harm to the Debtors.

26. In contrast, enjoining Loeb from currently exercising its remedies at no time would harm the latter because in the end, Loeb would ultimately be compensated – in full. That is, once the Debtors were to close on their exit financing agreement with lender, Loeb would receive the total dollar figure agreed upon by the parties last December – $791,900. All in all, Loeb's right to pursue its claim would be merely delayed, not extinguished.

27. At the same time, the public interest would be served by enjoining Loeb from exercising its remedies. Specifically, injunctive relief would allow the Debtors to effectively close on their exit financing agreement and implement the Joint Plan.

28. All in all, all prerequisites for injunctive relief are present under the facts of this adversary proceeding.

**[INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, for all the foregoing reasons and the reasons set forth in the attached Thompson Declaration, the Debtors are entitled to the entry of an Order (i) granting a temporary restraining order and/or a preliminary injunction enjoining Loeb from any action or legal proceeding (*including, without limitation, any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever*), including by way of direct claim, counterclaim, cross claim, appeal or any other action; and (ii) for such other and further relief as this Honorable Court deems just and proper.

**Respectfully submitted,**

**MASCHMEYER MARINAS P.C.**

By: /s/ *Paul B. Maschmeyer*
PAUL B. MASCHMEYER
FRANK S. MARINAS
350 South Main Street
Suite 105
Doylestown, PA  18901
(610) 296-3325

Dated:    January 6, 2019         Attorneys for the Debtors

# EXHIBIT "A"

# To be Supplied